IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| OFFICE MANAGEMENT SYSTEMS INC., D/B/A/ LOGISTA, | § § § | |
| Plaintiff, | § | |
| v. | § § | CASE NO. 1:25-CV-057-GHD-RP |
| AVALARA, INC., | § § | JURY TRIAL DEMANDED |
| Defendant. | § | |

## COMPLAINT

**COMES NOW** Plaintiff, Office Management Systems, Inc., d/b/a Logista ("Logista"), and files this Complaint against Avalara, Inc. ("Avalara") seeking damages resulting from Avalara's gross mishandling of Logista's 2023 Form 499-A filing with the Federal Communications Commission ("FCC"). Due to numerous errors committed by Avalara, the Universal Service Administrative Company ("USAC") issued an inflated Universal Service Fund ("USF") contribution invoice to Logista in the amount of $1,151,019.25. As a direct result of the foregoing, Logista has suffered damages of nearly $1,300,000 and experienced significant disruption to its ability to provide essential services to rural schools. Avalara's misclassification resulted in a USF overcharge of more than 67% of Logista's 2024 telecommunications margin — a substantial figure for a company of Logista's size. The amount Logista was forced to pay as a result of Avalara's admitted errors was more than the total USF contributions Logista had made during the entire prior year. Although Logista does not owe this fee—or any such "tax"—to the government, it has been denied the opportunity to amend its 2023 Form 499-A filing to correct Avalara's errors.

In support of this Complaint, Logista states as follows:

## I. PARTIES

1. Plaintiff Logista is a Mississippi corporation with its principal place of business located at 327 Yorkville Road East, Columbus, Mississippi.

2. Defendant Avalara is a Delaware corporation with its principal place of business located at 512 S. Mangum Street, Durham, North Carolina, and is doing business in Lowndes County, Mississippi.

## II. JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction under 28 U.S.C. §1332(a) because the matter in controversy exceeds $75,000 and there is complete diversity of citizenship between the parties.

4. Venue is proper in this Court under 28 U.S.C. §1391(b)(2) because Logista has its principal place of business in Lowndes County, Mississippi and suffered harm in such county; further, a substantial part of the events giving rise to Logista's claims occurred in Lowndes County, Mississippi.

## III. FACTUAL BACKGROUND

5. Logista is a Mississippi-based company providing essential telecommunications, tax compliance, and technology services throughout the Southeastern United States. Logista supports underserved rural areas. Its customers include schools, public entities, and nonprofit institutions that rely on E-rate reimbursements to fund their telecommunications infrastructure.

6. Founded in 1983 in rural Lowndes County, Mississippi, Logista has grown to serve rural educational institutions and municipalities throughout the Southeast. However, Logista is still a family-owned company dedicated to serving

2

small, rural school systems that lack access to competitive technology resources. Logista's operations are mission-critical to these underserved regions. The financial disruption caused by Avalara's errors jeopardizes these communities' access to technology and internet connectivity.

7. Logista is a participant in the FCC USF program and is required to file FCC Form 499-A annually to report telecommunications revenues and determine its obligation under the USF program.

8. Accurate completion and timely submission of Form 499-A is critical to Logista's compliance with federal law and its continued eligibility for funding through the USAC-administered E-rate program, which directly supports internet connectivity for low-income and rural students. Since October 2015, Logista has been a registered filer of FCC Form 499-A, consistently reporting telecommunications revenue as required.

9. In June 2021, Logista contracted with Avalara to manage its FCC Form 499-A compliance, including compilation, preparation, and submission of the form to the FCC via USAC's online portal.

10. Avalara marketed itself as a professional expert in tax and telecommunications compliance. It maintained access to Logista's FCC E-File account and assumed primary responsibility for preparing, formatting, and electronically certifying all filings on Logista's behalf. Although Logista was required to review and sign the final submission, Avalara was solely responsible for compiling the data, determining the appropriate amounts, and selecting the correct options on Form 499-A for reporting that information.

3

11. Avalara's Service Terms and Conditions and Supplemental Terms for Communications Clients governed the parties' relationship, including representations that:

a. Avalara would use accurate customer data;

b. Avalara would advise customers of discrepancies or required corrections;

c. Avalara would prepare and submit revisions where necessary; and

d. Avalara would act in compliance with all applicable FCC deadlines and policies.

12. Avalara maintained custody and control over the FCC portal credentials necessary to access and file Logista's Form 499-A.

13. On October 19, 2023, Logista received a notice from USAC indicating that its 2023 Form 499-A contained identical revenue figures as its 2022 filing, suggesting a potential error or duplication. This warning was immediately forwarded to Avalara.

14. Over the next several months, Logista and USAC exchanged numerous communications.

15. On January 24, 2024, Avalara told Logista that the Form 499-A had been entered online and was ready for certification.

16. On January 31, 2024, Rosella, an agent with USAC flagged discrepancies between the Form 499-A filed by Avalara and supporting information provided by Logista.

17. USAC asked for a copy of the spreadsheet used to prepare the 2023 Form 499-A, emphasizing that the data filed on January 24 by Avalara did not match Logista's documentation.

4

18. Logista repeatedly turned to Avalara for clarification and reconciliation of the numbers, particularly related to *inter*state and *intra*state revenue classifications and VoIP-related line items.

19. On February 27, 2024, USAC reminded Logista that the window for revising the 2023 Form 499-A would close at the end of March, urging Logista to address any issues immediately.

20. On March 12, 2024, after more follow-up from Logista and USAC, Avalara admitted that the 2023 Form 499-A filing had two major errors:

   a. Line 406: Revenue that was 100% *intra*state was misclassified as *inter*state, inflating USF-assessable revenue by nearly $2.1 million.

   b. Line 404.5: VoIP revenue was listed as $3.3 million, which over-reported Logista's VoIP revenue by $2.1 million.

21. Avalara stated that its internal data from AvaTax for Communications contradicted what had been reported and that it would correct the mistakes in Revision 6 to Logista's Form 499-A.

22. Avalara emailed what it represented to be a corrected version of Form 499-A (Revision 6) to Logista on March 12, 2024. Randy McDade, Chief Financial Officer of Logista, approved the changes and instructed Avalara to make the necessary corrections and file the revision.

23. On March 12, 2024, Mr. McDade emailed Rosella from USAC with Avalara's proposed corrections, affirming that the identified misclassifications should be corrected before final certification.

24. USAC responded that if the proposed revisions were accurate, they should be certified immediately and advised that the one-year deadline to revise the

5

2023 Form 499-A was fast approaching. However, Avalara failed to act by filing the approved Revision 6 of Logista's Form 499-A.

25. On March 29, 2024, Avalara submitted and certified Revision 5 of Logista's Form 499-A, the incorrect version, omitting the corrections that had already been approved by Logista. The deadline to submit a downward revision then passed on March 31, 2024.

26. On May 8, 2024, Avalara emailed Logista and stated that for the last revision, "Line 406 was not updated" and that it had "reported 100% of the revenue as interstate," acknowledging the exact issue identified, and supposedly corrected, months earlier.

27. On May 9, 2024, Avalara again confirmed in writing: "It looks like the revised return for 2023 wasn't completed correctly… everything was reported under the Interstate column."

28. The two emails make it clear that Avalara's compliance personnel recognized the errors and failed to fix them.

29. Avalara told Logista to file a revision, but by then, the deadline had passed.

30. On May 22, 2024, USAC issued Invoice UBD10001451533 to Logista, demanding $1,151,019.25 in USF contributions based on Avalara's incorrect filing.

31. To avoid disqualification from the E-rate program, Logista was then forced to:

a. Pay $819,320.08 in cash;

b. Lose $343,375.24 in E-rate reimbursements to the USAC that the USAC diverted from Logista to satisfy the financial obligations caused by Avalara;

6

    c. Borrow funds from its sister company at 8.5% interest, accruing $27,076.47 in interest as of October 30, 2024; and

    d. Incur $100,960.33 in legal fees, a number that unfortunately keeps growing with the appeal to the FCC and this lawsuit.

32. On June 4, 2024, Logista directly submitted the correct version—Revision 6—to USAC. However, on July 2, 2024, USAC rejected the filing as untimely, stating that only the FCC could waive the deadline and that Logista would need to file a formal appeal with the FCC.

33. After engaging national counsel and working diligently in an attempt to mitigate the damages that Avalara caused, on August 30, 2024, Logista submitted an Emergency Petition for Review and Waiver (the "First Petition") to the FCC, presenting:

    a. Avalara's written admissions of fault;

    b. Screenshots of Revision 6;

    c. Logista's efforts to act in good faith; and

    d. The financial hardship caused by Avalara's failure to file Revision 6.

34. Despite precedent for granting waivers in similar cases involving larger companies (e.g., ATS, Peerless, Ascent Media), the FCC denied Logista's First Petition without explanation on January 2, 2025, disallowing the downward revisions filed after the one-year window, regardless of Avalara's misconduct.

35. Logista filed a Petition for Reconsideration (the "Second Petition") to the FCC on January 31, 2025, and this Second Petition remains pending.

36. Logista will never recover the lost funds without relief from this Court.

7

37. Logista has attempted, on numerous occasions, to have Avalara remedy its errors. Between May 2024 and July 2024, Logista pleaded with Avalara to file the waiver on its behalf. However, Avalara refused Logista's requests and later Logista's demands. In doing so, Avalara delayed their responses to Logista's requests for weeks, attempted to keep Logista at bay by claiming that they were "reaching out to management" as an excuse for their delays and failures, and ultimately, in a final correspondence to Logista on June 28, 2024, stated that they could not assist Logista any longer because Avalara "cannot practice law" on behalf of clients.

38. On October 30, 2024, November 21, 2024, and January 8, 2025, Logista sent formal demands for reimbursement to Avalara. To date, Avalara has refused to accept responsibility or compensate Logista in any way.

39. All because of Avalara's actions and behavior, Logista remains under financial strain to this day, has suffered operational disruption, and has had to self-fund what should never have occurred but for Avalara's clear, admitted, and repeated failures.

IV. CLAIMS

COUNT I
BREACH OF CONTRACT

40. Logista incorporates and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

41. Avalara entered into a valid and binding agreement with Logista to provide professional, competent, and timely regulatory compliance services, including the preparation, review, and filing of FCC Form 499-A in accordance with applicable federal rules and deadlines.

8

42. Avalara materially breached the agreement by failing to submit the correct and internally prepared revision of Logista's 2023 FCC Form 499-A, despite having acknowledged and documented the necessary corrections. Instead, Avalara filed an outdated and erroneous version, even after admitting its deficiencies, and failed to act before the critical one-year downward revision deadline of March 31, 2024. Avalara also failed to escalate the issue, inform Logista of the filing error in a timely manner, or provide any meaningful assistance in the regulatory appeals process after the error was discovered.

43. These breaches were not only foreseeable but directly caused substantial and measurable harm to Logista, including financial losses nearly exceeding $1,300,000, disruption of E-rate reimbursements, interest costs, legal expenses, operational strain, reputational harm, and the denial of a regulatory waiver that would have otherwise been granted but for Avalara's failures.

WHEREFORE, PREMISES CONSIDERED, Logista demands judgment against Avalara for compensatory and punitive damages, interest, attorneys' fees, costs of Court, and such other equitable relief as may be deemed appropriate at trial.

## COUNT II
## NEGLIGENCE

44. Logista incorporates and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

45. Avalara owed Logista a duty of care to perform its regulatory compliance services in accordance with applicable professional standards, industry practices, and federal filing requirements, including the accurate preparation and timely submission of FCC Form 499-A.

46. Avalara breached that duty by misclassifying revenues, failing to update the filings in a timely manner, representing to Logista that Form 499-A was accurate, and ultimately filing an erroneous and materially incorrect version of the form. These failures occurred despite Avalara having all the necessary information to prepare the correct filing and being solely responsible for doing so. As Logista's designated compliance partner, Avalara bore primary responsibility for ensuring the filing's accuracy and timeliness and failed entirely in that role.

47. Avalara's multiple acts of negligence directly caused substantial financial and operational harm to Logista, including, but not limited to, over $1.29 million in direct and consequential damages.

WHEREFORE, PREMISES CONSIDERED, Logista demands judgment against Avalara for compensatory and punitive damages, interest, attorneys' fees, costs of Court, and such other equitable relief as may be deemed appropriate at trial.

## COUNT III
## GROSS NEGLIGENCE

48. Logista incorporates and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

49. Avalara's conduct constitutes gross negligence. Avalara possessed and acknowledged the correct data necessary to complete an accurate filing, knew that the regulatory deadline was imminent, and yet failed to take any action to prevent the foreseeable and catastrophic financial harm to Logista.

50. Avalara's inaction, despite its knowledge of the error and the consequences, demonstrates a reckless disregard for Logista's rights, obligations, and the significant regulatory and financial harm that would result from Avalara's failures. Punitive damages are warranted to deter such conduct in the future.

WHEREFORE, PREMISES CONSIDERED, Logista demands judgment against Avalara for compensatory and punitive damages, interest, attorneys' fees, costs of Court, and such other equitable relief as may be deemed appropriate at trial.

## PRAYER FOR RELIEF

WHEREFORE, Logista respectfully requests that this Court enter judgment against Avalara for:

a. Compensatory damages in an amount to be determined at trial;

b. Punitive damages arising from Avalara's gross negligence;

c. Pre- and post-judgment interest as allowed by law;

d. Reasonable attorneys' fees and costs; and

e. Such other relief the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL CLAIMS.**

Respectfully submitted,

*/s/ Justin G. Williams*
Justin G. Williams MS Bar No. 104312

**TANNER & GUIN LLC**
2711 University Blvd. Suite 201
Tuscaloosa, Alabama 35401
Phone: (205) 633-0218
Fax: (205) 633-0318
Email: justin@tannerguin.law

*Counsel for Plaintiff*

**PLEASE SERVE THE FOLLOWING DEFENDANT BY CERTIFIED MAIL:**

Avalara, Inc.
c/o The Corporation Trust Company
1209 Orange Street
Wilmington, DE  19801